J-S37017-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: N.L.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1870 EDA 2021 |

Appeal from the Order Entered August 20, 2021
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No: CP-51-DP-0002350-2017

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.N.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: N.L.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1871 EDA 2021 |

Appeal from the Decree Entered August 20, 2021
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No: CP-51-AP-0000289-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M.-S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: N.L.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1872 EDA 2021 |

Appeal from the Order Entered August 20, 2021
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No: CP-51-DP-0002367-2017

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M.-S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: N.L.M., MOTHER | : | |
| | : | |

:
:
:
:
:   No. 1873 EDA 2021

Appeal from the Decree Entered August 20, 2021
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No:  CP-51-AP-0000290-2019

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.*

MEMORANDUM BY MURRAY, J.:                    **FILED JANUARY 7, 2022**

N.L.M. (Mother) appeals from the involuntary termination of her parental rights to her daughter, A.M.-S., born in September 2014, and her son, Z.N.M., born in July 2010 (collectively, Children).[1]  Upon careful review, we affirm.

On August 30, 2017, Philadelphia County Department of Human Services (DHS) filed for emergency protective custody of the Children based on allegations that Mother "had physically harmed [Z.N.M.], and there was marijuana in the home."  N.T., 8/20/21, at 62.  The trial court granted DHS protective custody.  After a shelter care hearing on September 1, 2017, the court ordered Children to remain in DHS custody.  DHS placed Z.N.M. in a treatment foster care home through Gemma Services, and placed A.M.-S. in a general foster home through Children's Choice.  On September 25, 2017, DHS filed a dependency petition pursuant to the Juvenile Act, 23 Pa.C.S.A. §

_____

* Former Justice specially assigned to the Superior Court.

[1] The court also terminated the parental rights of the Children's fathers; the fathers have not appealed.

6302. Following a hearing on October 4, 2017, the court adjudicated Children dependent with the permanency goal of reunification.

DHS created a single case plan (SCP) for Mother. Mother's objectives included maintaining a sober lifestyle and contact with the Children, and complying with Community Umbrella Agency (CUA) and court recommendations. N.T., 8/20/21, at 65. Mother remained largely noncompliant with her SCP objectives, and on May 3, 2021, DHS filed petitions to involuntarily terminate Mother's parental rights and change Children's permanency goal to adoption.

The trial court conducted a hearing on August 20, 2021. Mother was present, but did not testify. DHS presented testimony from Crystal Light, the CUA case manager; Neely Jones, the CUA case management supervisor; and Mary Davis, Mother's therapist at WES Health Systems.[2]

Ms. Jones testified that Mother failed to comply with her SCP objectives. For example, Mother had not enrolled in a drug and alcohol

---

[2] Children were represented by GAL, William Calandra, Esquire, and TPR/legal counsel, Jo-Ann Braverman, Esquire. *See* 23 Pa.C.S.A. § 2313(a) (children have statutory right to counsel in contested involuntary termination proceedings) and *In re K.R*., 200 A.3d 969 (Pa. Super. 2018) (*en banc*), but *see In Re: T.S., E.S.*, 192 A.3d 1080, 1092 (Pa. 2018) ("[D]uring contested termination[ ]of[ ]parental[ ]rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests.").

program, and did not submit to drug testing with the Clinical Evaluation Unit (CEU). *Id.* at 66. Ms. Jones also testified that Mother did not respond when contacted for drug screening. *Id.* at 67.

Regarding visitation with the Children, Ms. Jones testified:

[DHS]: Okay. For visitation with [Z.N.M.], what is mom's visitation schedule?

Ms. Jones: At [Z.N.M.'s] discretion, it would be supervised, weekly.

[DHS]: And, since February of 2021, has mother visited with [Z.N.M.]?

Ms. Jones: No.

[DHS]: Has [Z.N.M.] indicated that he does not wish to visit with mom?

Ms. Jones: Yes.

[DHS]: Has mother reached out to CUA to set up visits?

Ms. Jones: No.

[DHS]: Has mother reached out to CUA to see if [Z.N.M.] has changed his mind?

Ms. Jones: No.

[DHS]: Okay. For [A.M.-S.], what is her visitation schedule?

Ms. Jones: Weekly, supervised by the agency.

[DHS]: And when's the last time mother visited with [A.M.-S.]?

Ms. Jones: February 25 of this year.

[DHS]: Since that time, has mother had – contacted CUA to set up visits?

Ms. Jones: No.

[DHS]: Has CUA reached out to mother in order to set up visits?

Ms. Jones: Yes.

N.T., 8/20/21, at 67-68.

Ms. Jones expressed concern that on the occasions when Mother visited with Children, she made inappropriate comments and "appeared high in several visits." *Id.* at 68-69. In addition, Mother did not attend court-ordered parenting classes, and failed to provide information regarding any efforts to obtain housing and employment. *Id.* at 69.

Mary Davis, Mother's therapist with WES Health Systems, testified about Mother's mental health. Ms. Davis was assigned to Mother's case in October of 2015, prior to DHS becoming involved with the Children. N.T., 8/20/21, at 21. Ms. Davis testified that although Mother has consistently attended weekly therapy sessions, her mental health remained unstable, and since April of 2021, Mother's sessions have increased to twice a week. *Id.* at 28-29. Ms. Davis described Mother's progress as: "Two steps forward, maybe a step back when she's triggered by some type of anxiety experience or something that it being said to her – I apologize – something that is – is – she's unable to cope[.]" *Id.* at 20. Ms. Davis opined that Mother will require mental health treatment "for the foreseeable future." *Id.* at 31.

At the conclusion of the hearing, the trial court involuntarily terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(2), (5), (8), and (b), and changed the Children's permanency goal from

reunification to adoption. On September 19, 2021, Mother timely filed notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The court filed a Rule 1925(a) opinion on October 19, 2021 in which it referenced the reasons stated on the record at the August 20, 2021 hearing as the basis for termination. This Court consolidated Mother's appeals *sua sponte* on October 8, 2021. On October 23, 2021, Mother filed an amended statement of matters complained of on appeal, raising one additional issue.[3]

On appeal, Mother presents five questions for review:

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, N.M., pursuant to 23 Pa.C.S.A. sections 2511 (a) (2) where Mother presented evidence that she has remedied her situation by maintaining housing, taking parenting classes and intensive drug treatment and mental health counselling and has the present capacity to care for her child[?]

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, N.M., pursuant to 23 Pa.C.S.A. sections 2511 (a) (5) where evidence was provided to establish that the child was removed from the care of the Mother and Mother is now capable of caring for her child[?]

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, N.M., pursuant to

---

[3] Mother's original concise statements filed contemporaneously with her notices of appeal, "reserve[d] the right to file a supplemental 1925 statement once the Notes of Testimony of the hearings ordered above are transcribed and made available to counsel." Pa.R.A.P. 1925(b) Statement, 9/19/21.

23 Pa.C.S.A. sections 2511 (a) (8) where evidence was presented to show that Mother is now capable of caring for her children after she completed parenting classes, secured and maintained housing and continues in her dual diagnosis drug and mental health treatment programs[?]

4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, N.M., pursuant to 23 Pa.C.S.A. sections 2511 (b) where evidence was presented that established the children had a close bond with their Mother and they had lived with their Mother for the most part of their lives[?] Additionally, Mother maintained that bond by visiting with her children when she was permitted to visit them.

5. Whether the trial court erred and/or abused its discretion by refusing to allow mother to participate in the hearing during the direct testimony of her therapist[?]

Mother's Brief at 7 (reordered for disposition).[4]

Mother's first three issues challenge the trial court's termination of her parental rights under 23 Pa.C.S.A. § 2511(a). The Pennsylvania Supreme Court has explained our standard of review as follows:

[A]ppellate courts [must] accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

_____

[4] DHS advised it would "not be filing a brief in this matter" by correspondence to this Court dated November 24, 2021.

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (citations omitted).

> We further recognize that termination involves a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

It is well settled that we only need agree with the trial court as to one subsection of Section 2511(a), as well as Section 2511(b), to affirm. ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Instantly, we review the trial court's termination decision under Section 2511(a)(2) and (b), which provide:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

> . . .

> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on

the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Mother asserts DHS failed to prove, by clear and convincing evidence, that she demonstrated a settled purpose of relinquishing her parental rights. Mother's Brief at 17. She argues:

Mother has substantially completed her FSP goal of mental health treatment and medication management. Mother continues to attend her mental health treatment there. Mother's use of marijuana was legal due to her medical marijuana car[d]. Mother has the parenting skills need[ed] as testified to by her therapist. Mother was in the process of applying for social

- 9 -

security, and can soon provide a safe home for herself and her children.

*Id.*   Mother claims the trial court improperly terminated her parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2) "because Mother has the present capacity to care for her child[ren]."   We disagree.

Children were in the care of DHS for nearly four years before DHS filed the termination petitions in May of 2021.   At the hearing, the trial court heard from Mother's therapist, Mary Davis, regarding Mother's ongoing mental health treatment.   While Ms. Davis testified that Mother has consistently attended therapy sessions (since 2015 and prior to DHS involvement in this case), the court expressed concern regarding Mother's lack of progress.   Referencing Section 2511(a)(2), the trial court explained:

> This case came in – both of these children's cases came in because there was a report that mom choked [Z.N.M.], that he was having difficulty breathing, that there were observed scratch marks on his neck, that he confirmed that he was choked, and that mom was not cooperative with DHS when they went out to do the investigation.
>
> . . .
>
> … The testimony of Ms. Davis, while very clear and credible that mom is consistent in her mental health therapy, we are six years into mom receiving mental health therapy, and the testimony of Ms. Davis is that she still has to call on a consistent basis to be – what I would call talked off the ledge.
>
> … Ms. Davis indicated that mom sometimes calls in crisis, and that when mom is in crisis, what came out on cross-examination by GAL/Child advocate is that mom would be yelling, screaming. She has to be talked down.  Ms. Davis has to ask if what she's going through is such that she needs to be hospitalized.

And, while the testimony is clear that mom has never had to be hospitalized when she is in that crisis, given that this case because mom was clearly in crisis, such that she was willing to physically assault, at that time, six-year-old or seven-year-old [Z.N.M.], I have major concerns that mom has not demonstrated in six years, or the four years that the kids have been in care, that she still doesn't have crises where she needs someone else's assistance to manage her emotions and her anxiety and the panic that she feels.

And, given the circumstances that brought both [Z.N.M.] and [A.M.-S.] into care, namely the incident that occurred with [Z.N.M.], I cannot find that, in the near future, mom would be closer to being ready to parent.

Let me be clear. Ms. Davis gave her opinion that she believed mom could be reunified with her children, but Ms. Davis doesn't function in the child welfare arena.

She's functioning in the progress that she has seen mom had in the six years since she's been working with her, and the fact that mom has not had to be hospitalized as a result of any of her crises, but she also talked about the fact, when cross-examined, that some of mom's crises will include mom going out walking in the streets late at night, just trying to process what's going on.

That is not something that can occur when you have an 11-year-old and a six-year-old to care for. And, so, this Court does not believe that mom has the capacity, even with the mental health services that she has in place right now, to provide the essential parental care, control or subsistence necessary for [Z.N.M.] or for [A.M.-S.].

N.T., 8/20/21, at 109-12.

In addition to above testimony regarding Mother's mental health, the CUA case supervisor, Ms. Jones, testified that Mother complied only minimally with her SCP objectives by failing to obtain drug screens, visit regularly and appropriately with the Children (since February of 2021), and secure stable housing and employment. *See* N.T., 8/20/21, at 69.

Accordingly, the trial court did not abuse its discretion in terminating Mother's parental rights under Section 2511(a)(2) because the record demonstrates that Mother's repeated and continued incapacity has caused the Children to be without essential parental care, and the incapacity cannot or will not be remedied.

Mother also argues the trial court abused its discretion in terminating her parental rights under Section 2511(b). Mother asserts that she is bonded with the Children because they lived with her for the first part of their lives. Without expanding, Mother attempts to excuse her failure to visit Children by claiming DHS should have "contacted Mother through alternative means," but she does not specify what "alternative means" DHS should have used. Mother's Brief at 20.

With respect to Section 2511(b), this Court has stated that intangibles "such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). The trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63

(Pa. Super. 2008) (citation omitted). In weighing bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *In re T.S.M.*, 71 A.3d at 269. "Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id*.

> Pertinently, the trial court explained:
>
> With respect to 2511(b), the testimony is that mom hasn't had visits with either of these children since the beginning of this year – February 25 of this year.
>
> And there's not been any negative impact. In fact, the testimony of CUA, which I did find credible, around [Z.N.M.'s] behavior, is that he's actually doing better since he's not had the visits with mom, and that there doesn't seem to be any real change in [A.M.-S.] since she's not had the visits with mom.
>
> And the testimony of CUA and the offer of proof from [Children's] TPR counsel, who specifically is to address whether or not what they want is separate from what might be argued is in their best interest – and what they want in this particular case also appears to be in line with what I believe is in their best interest, which is to stay where they are and have the adoption finalized.

N.T., 8/20/21, at 115-16.

We find no abuse of discretion. The record does not support a finding of a bond between Mother and Children, who had little contact with Mother since coming into the care of DHS in August 2017, and no contact since February 2021. Ms. Jones testified that Children look to their foster parents for care and comfort, and described the relationships as "very loving and

affectionate." N.T., 8/20/21, at 82. Ms. Jones indicated Children's foster parents ensure their daily needs are met, and opined that termination would not cause Children emotional harm. *Id.* at 83. Further, Children's TPR, *i.e.*, legal counsel, informed the court that Children wish to stay with their respective caretakers, and the GAL/child advocate stressed that Mother's continuing mental health issues preclude Mother from parenting Children for the foreseeable future. *Id* at 97, 100. As such, the evidence supports the court's conclusion that termination serves Children's developmental, physical, and emotional needs and welfare pursuant to Section 2511(b).

In her final issue, Mother argues the trial court abused its discretion by "refusing to allow mother to participate in the hearing during the direct testimony of her therapist[, Mary Davis]." Mother's Brief at 16. This issue is waived because Mother failed to timely object. "The absence of a contemporaneous objection below constitutes a waiver of the claim on appeal." *Commonwealth v. Rodriguez*, 174 A.3d 1130, 1145 (Pa. Super. 2017) (citing *Commonwealth v. Powell*, 956 A.2d 406, 423 (Pa. 2008)). Our Supreme Court has stated:

> [I]t is axiomatic that issues are preserved when objections are made timely to the error or offense. *See Commonwealth v. May*, [] 887 A.2d 750, 761 ([Pa.] 2005) (holding that an "absence of contemporaneous objections renders" an appellant's claim waived); and *Commonwealth v. Bruce*, [] 207 916 A.2d 657, 671 ([Pa. Super.] 2007), *appeal denied*, [ ] 932 A.2d 74 ([Pa.] 2007) (holding that a "failure to offer a timely and specific objection results in waiver of" the claim). Therefore, we shall consider any issue waived where Appellant failed to assert a timely objection.

*Commonwealth v. Baumhammers*, 960 A.2d 59, 73 (Pa. 2008).

In this case, the following on-the-record discussion took place during the termination hearing:

> [COURT]: Let me ask – Counsel, we can do this one of two ways: We can start with your case in chief or we can have – do a little out of turn if mother's counsel has no objection, sequester [the case manager], have her call her witness and have her testify, as long as no other counsel objects to that, and, in fact, to keep everything fair, probably have mom step outside too, and then just counsel be in the courtroom, and then start with your case in chief, just in case your case goes longer.
>
> [DHS]: That makes sense, Your Honor. I have no objection to starting with Ms. Davis.
>
> [GAL]: That's fine with me.
>
> [Counsel for Children]: No objection
>
> . . .
>
> [COURT]: Okay. So, I'm going to – Ms. Davis, we're going to start with you, which is a little bit unusual, but because you leave at 4 and we're already at quarter to 3, I think it makes sense to start with you. And I'll have everyone, including mom, step out of the courtroom, and we'll call them back in once your testimony is done.
>
> [Mother's Counsel]: And, just so Your Honor is aware, I don't plan on calling mother, **so it would be my request that she remain**.
>
> [COURT]: Does anyone else plan to call mother?
>
> [Counsel for Children]: Possibly.
>
> [COURT]: So, I'll still ask that she step outside, given that other counsel may call her.

N.T., 8/20/21, at 5-6 (emphasis added).

- 15 -

At the conclusion of Ms. Davis' testimony, the court stated:

[COURT]: And let me be clear for the record. While I wouldn't allow mom to be present as it pertained to her therapist and what she was going to say, that was because that was mom listening to what the therapist might say prior to being questioned by anybody else.

However, for the rest of the case, I'm going to allow her to be present because she has the right to hear what those opposing her would say about her.

[Counsel for Mother]: Thank you, Your Honor.

*Id.* at 51.

Upon review, we conclude that Mother failed to timely place her objection on the record when the court denied her request to remain in the courtroom during Ms. Davis's testimony. When the court re-raised the issue at the conclusion of Ms. Davis' testimony, Mother, again, failed to object. To preserve the issue, Mother was required to make a contemporaneous objection to the trial court's determination. ***See Rodriguez***, ***supra***; Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Further, Mother's entire argument on this issue is as follows:

The Court in ***K.M.B.*** held that the court committed reversible error when it refused to allow mother to participate in the hearing during the direct testimony of her therapist. The Trial [*sic*] violated Mother's constitutional guarantee to due process by not permitting mother to participate in the hearing as defined by section 2513 (b) of the Adoption Act and Sections 6337 and 6338 of the Juvenile Act, as well as Rule 15.4 of the Orphans' Court Rules and Pa.R.J.C.P. 1608(1).

- 16 -

Had Mother been able to hear her therapist's testimony she would have felt more comfortable testifying and able to explain her current compliance with her single case plan objectives. Mother was only allowed to listen to all the negative allegations made against her and none of the accomplishments she has made since her children came into care.

Mother's Brief at 16-17.

We also find waiver because Mother's argument is grossly undeveloped. It is well-settled that arguments which are not appropriately developed are waived. *See In re Estate of Whitley*, 50 A.3d 203, 209 (Pa. Super. 2012) (reiterating that this Court "will not consider the merits of an argument which fails to cite relevant case or statutory authority"); *see also Lackner v. Glosser*, 892 A.2d 21, 29–30 (Pa. Super. 2006). We recently summarized:

> "The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." *Commonwealth v. Martz*, 232 A.3d 801, 811 (Pa. Super. 2020) (citation and bracketed language omitted). *See* Pa.R.A.P. 2111 and Pa.R.A.P. 2119 (listing argument requirements for appellate briefs). When an appellant fails to properly raise and develop issues in briefs with arguments that are sufficiently developed for our review, we may dismiss the appeal or find certain issues waived. *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007). *See* Pa.R.A.P. 2101 (explaining that substantial briefing defects may result in dismissal of appeal). It is not this Court's role to develop an appellant's argument where the brief provides mere cursory legal discussion. *Commonwealth v. Johnson*, 985 A.2d 915, 925 (Pa. 2009).

*Kaur v. Singh*, 259 A.3d 505, 511 (Pa. Super. 2021).

Here, as with **Kaur**, we find waiver based on Mother's "cursory legal discussion," which lacks citation to pertinent authority[5] as well as meaningful legal analysis. Moreover, in the absence of waiver, we would find no abuse of the trial court's discretion as the record overwhelmingly supports termination. It is apparent that even if the court had permitted Mother to observe Ms. Davis' testimony, it would not alter the finding that Mother was noncompliant with her SCP objectives and termination best served Children's needs and welfare.

Decrees and Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/7/2022

---

[5] In her argument, Mother simply cites "**K.M.B.**," without any volume, page numbers, or year, and does not include a cite to **K.M.B.** in her table of authorities. **See** Mother's Brief at 3, 16.